___

**SO ORDERED,**



*[signature]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: TONY AND MELISA EASTER** | **CASE NO.: 19-12063-SDM** |
| **DEBTORS** | **CHAPTER 11** |

---

## MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, DENYING MOTIONS TO STRIKE, AND ALLOWING THE DEBTORS TO PROCEED UNDER SUBCHAPTER V OF CHAPTER 11

This matter came before the Court for a telephonic hearing on July 29, 2020 on the Debtors' Amended Voluntary Petition (Dkt. #200), the United States Trustee's (the "UST") *Response/Objection* (Dkt. #213), two identical *Motions to Strike* (Dkt. #219, 220) filed by Creditors Community Bank and First American National Bank (collectively, the "Creditors"), the Debtors' *Reply and Response* (Dkt. #267), and the Debtors' *Supplemental Reply and Response* (Dkt. #275). At the conclusion of the hearing, the Court issued a bench ruling allowing the Debtors to procced under subchapter V of Chapter 11. The Court's ruling became effective on July 29,

2020, and this opinion and order merely incorporates that ruling, including all arguments, discussions, findings of fact, and conclusions of law by reference.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)(matters concerning the administration of the estate).

## II. FACTS AND PROCEDURAL HISTORY

The Debtors, Tony and Melisa Easter, filed their voluntary petition on May 16, 2019 (Dkt. #1). The Debtors are individuals who operate a trucking and/or hauling business. The Debtors' counsel advised the Court that, due to a combination of factors, the Debtors' trucking operation is substantially smaller than when it first filed for bankruptcy protection. In any event, in the voluntary petition under Part 3, Number 13, the Debtors indicated that while they were filing under Chapter 11, they were not small business debtors within the meaning of 11 U.S.C. § 101(51D).[1] Later, on July 18, 2019, the Debtors amended their voluntary petition to change the designation to small business debtors (Dkt. #64). On January 17, 2020, the Debtors filed their Disclosure Statement (Dkt. #127) and Chapter 11 Plan of Reorganization (Dkt. #128). Shortly after, the Court entered an *Order Conditionally Approving Disclosure Statement* (Dkt. #129).

Several parties objected to confirmation of the Debtors' Chapter 11 plan, including the UST, the Creditors referenced above involved in the instant matter before the Court, and an additional Creditor, Wells Fargo Equipment Finance, Inc. As required, the Debtors then filed the

---

[1] Except where stated otherwise, all statutory references will be to Title 11 of the United States Code.

*Ballot Summary and Certification* (Dkt. #142), which reflected only one Creditor, Renasant Bank, as having accepted the Chapter 11 plan. In an interesting twist, the Debtors moved to disqualify the ballot of an unsecured Creditor, Discover Bank, based on a class designation error (Dkt. #143). The Court rejected that argument and denied the motion. Before the Court conducted the confirmation hearing and about 10 months after the voluntary petition date, the Debtors filed a *Motion to Amend Petition* (the "Motion to Amend")(Dkt. #149). In their Motion to Amend, the Debtors argued that because of the rejecting vote(s) of the class of unsecured creditors and the impediments of the "absolute priority rule", the Debtors should be allowed to amend their voluntary petition and proceed under the newly enacted subchapter V of Chapter 11. At the confirmation hearing on March 2, 2020, the Debtors conceded that their Chapter 11 plan was not confirmable, and the Court agreed. *See Order Denying the Conditionally Approved Disclosure Statement* (Dkt. #153).

The Court held a hearing on April 17, 2020 on the Debtors' Motion to Amend, which drew responses and objections similar in substance to those filed by the UST and the Creditors now presently before the Court. At the outset of the hearing, the Court informed the parties that it faced a procedural quandary in light of Federal Rule of Bankruptcy Procedure 1009: Are the Debtors required to seek leave to amend their voluntary petition to proceed under Subchapter V? The Court considered the body of relatively new case law on the issue. Specifically, the Court analyzed the procedural findings in *In re Progressive Solutions*, 615 B.R. 894 (Bankr. C.D. Cal. 2020) and *In re Body Transit*, 613 B.R. 400 (Bankr. E.D. Pa. 2020).

The Court agreed with *Progressive Solutions* and *Body Transit* in that Rule 1009(a) allows debtors to amend their voluntary petition at any time before the case is closed, and as such, a motion that merely sought permission to amend their voluntary petition would not be procedurally

proper because no such permission was required. *See Order Denying Debtors' Motion to Amend Petition* (Dkt. #149). The Court's ruling on the Debtors' Motion to Amend, while not ideal, was the correct one. There was simply no contested matter before the Court as to the issue of whether the Debtors may make a subchapter V election because no such election had occurred at that point. Unlike the Debtor in *Body Transit* who filed both an amended voluntary petition and a motion seeking permission to proceed under subchapter V, the Debtors in this case did not do so. While the Debtors here did attach a proposed amended petition as an exhibit, they did not amend their voluntary petition to elect to proceed under subchapter V, and there was no objection to an amended voluntary petition.

In response to the Court's denial of the Debtors' Motion to Amend, the Debtors amended their voluntary petition to elect to proceed under subchapter V of Chapter 11. (Dkt. #200). In due course, the UST filed its *Notice of Appointment of Subchapter V Trustee* (Dkt. #209), and the UST and the Creditors filed their responses and motions to strike the amended voluntary petition. At long last, the Court could determine whether the Debtors, who have a Chapter 11 case pending on the effective date of the SBRA, may amend their voluntary petition and elect to proceed under subchapter V. While the Court notes that this Chapter 11 case has not been the model for procedural clarity, for the reasons discussed below, the Debtors may proceed under subchapter V.[2]

### III. DISCUSSION

The arguments made by the UST against allowing the Debtors to proceed under subchapter V are three-fold: (1) the Debtors are attempting to further delay confirmation and evade the 45-

---

[2] Since the Court's ruling on July 29, 2020, the Debtors have filed their *Subchapter V Plan of Reorganization* (Dkt. #304) and this Court has entered an *Order and Notice Under Subchapter V of Chapter 11 Fixing 1111(b) Election Deadline, Record Holder Deadline, Voting Deadline, Plan Objection Deadline and Confirmation Hearing Date* (Dkt. #309).

day deadline requirements to confirm a plan under § 1129(e); (2) the UST and other parties would be hindered in or rendered incapable of performing their statutory duties imposed under subchapter V; and (3) a retroactive application of the SBRA affects preexisting property rights of creditors.

The arguments made by the Creditors are along similar lines. Specifically, they argue that allowing retroactive application of the SBRA (or at least cases which had decided the issue by the time the Creditors' *Motions to Strike* were filed and the Court heard oral arguments) do not take into account the Creditors' equitable arguments that are present in this case. Alternatively, any equitable or prejudicial arguments made in those cases were "apparently not well developed." (Dkt. #219, Ex. A, P. 5). As an example of the Debtors' unclean hands, i.e., prejudice the Creditors have suffered, the Creditors cite several instances where the Debtor willfully refused to provide information concerning the Creditors' collateral interest as ordered by the Court.[3] Further, the Creditors argue that a retroactive application of the SBRA would create procedural complications and a potential basis for dismissal or conversion of the bankruptcy case under § 1112. As to the elimination of the absolute priority rule contained in § 1129(b)(2)(B), the Creditors argue that its elimination via the SBRA is, in and of itself, a taking of a vested property right if the Court allows the Debtors to proceed under subchapter V.

In response, the Debtors argue that the Creditors' complaints about the elimination of the absolute priority rule prove their point—they speak to the legislative intent behind the passage of the SBRA and the difficulty small business debtors face in obtaining a confirmable plan. Further, the Debtors point the Court to other cases decided this year that resolve retroactive application of the SBRA and potential procedural hurdles in their favor. Those cases are discussed below. In

---

[3] The Court notes that these alleged acts or omissions by the Debtors relate to other orders on motions for relief from the automatic stay and adequate protection filed by the Creditors.

short, the Debtors argue that Congress did not specifically prohibit retroactive application in the SBRA, and it should be allowed in this case. As to the procedural or timing requirements imposed under subchapter V, the Debtors posit that nothing prohibits the Court from entering a scheduling order to comply with the provisions of the SBRA, which would include scheduling an additional debtor interview with a newly appointed subchapter V Trustee, providing for an additional 341 hearing, and updating plan filing deadlines, among others.

If judicial economy is at the forefront of the Court's concerns, the Debtors believe that forcing them to dismiss the case and refile under subchapter V, pay an additional filing fee, and "lose" all of the work that has been done in the current case does not promote efficiency. Concerning the Creditors' vested or substantive property rights, the Debtors argue that the exclusion of the absolute priority rule is not a substantive property right because it does not affect the Creditors' title to personal property or its lien rights to personal property. The Debtors do admit, however, that the Bankruptcy Code (at least under §§ 506 and 1190(3)) does affect some contractual and/or substantive rights of creditors when the Debtor bifurcates a claim into secured and unsecured claims. In other words, the argument that the Creditors' substantive property rights could be affected by retroactive application of the SBRA might have merit if the Creditors' collateral was the Debtors' homestead, and the Debtors' homestead fit within the context of the SBRA so that the lien rights of creditors holding the homestead as collateral could be modified. But the Debtors argue those are not the facts presently before the Court.

Finally, as to the Debtors' failure to give the Creditors certain information concerning its collateral, the Debtors argue that due to the nature of the business (the collateral involved, collateral being subleased to subcontractors, multiple drivers, etc.), the Debtors were not always able to get information to the Court as timely as the Court would have liked or on the Creditors'

timeline. The Debtors argue that despite certain failures in the case, they have made good faith attempts to comply with the Court's orders.

The Court has considered every argument for and against allowing the Debtors to proceed under subchapter V. In addition, since the Debtors' failed attempt seeking permission to elect to proceed under subchapter V, several courts have considered legal issues similar to those before this Court. The parties briefed and outlined many of those cases in their pleadings and arguments, and the Court will address all arguments raised and the relevant cases at the time of the Court's ruling.

**A. Brief Overview of the SBRA.**

The Small Business Reorganization Act of 2019 (the "SBRA") took effect on Feb. 19, 2020. The SBRA was passed to introduce a more efficient path to reorganization for smaller businesses. H.R. Rep. No. 116-171, at 1-2 (2019), available at https://www.congress.gov/congressionalreport/116th-congress/house-report/171/1; *see also In re Progressive Solutions*, 615 B.R. 894, 895-98 (Bankr. C.D. Cal. 2020)(discussing the SBRA's legislative history and necessity of its passage for small business to effectively reorganize); *In re Deidre Ventura*, 615 B.R. 1, 12-13 (Bankr. E.D. N.Y. 2020)(same); *In re Gregory Trepetin*, 617 B.R. 841, 843 (Bankr. D. Md. 2020)(same).

Now codified in §§ 1181-1195, the SBRA gives small businesses certain advantages not previously available under Chapter 11. The most relevant to the issue(s) before the Court are: (1) the elimination of the absolute priority rule, which allows equity holders to retain their ownership interests without paying all creditors in full; (2) a debtor's exclusive right to file a plan of reorganization; and (3) the ability to confirm a plan without obtaining consent of an impaired class of creditors. 11 U.S.C. §§ 1181(a), 1191(b), 1189(a).

The SBRA also imposes several procedural and timing requirements. First, the SBRA requires debtors to file a plan within 90 days of the order for relief. 11 U.S.C. § 1189(b). The Court must also hold a mandatory status conference within 60 days of the order for relief. 11 U.S.C. § 1188(a). Fourteen days prior to that status conference, the debtor must also submit a status report, which details efforts to reach a consensual plan. 11 U.S.C. § 1188(c). Finally, both the 60-day status conference and 90-day plan filing deadlines may be extended if the "need for the extension is attributable to circumstances for which the debtor should not be justly held accountable." 11 U.S.C. § 1188(a), (b); § 1189(b).

The SBRA, however, mentions nothing as to whether it applies to pending cases. Consequently, bankruptcy courts are tasked with deciding whether a debtor, who commenced a Chapter 11 case before the SBRA went into effect may amend a voluntary petition to elect to proceed under subchapter V. The issue above has a few moving parts: (1) whether it is procedurally permissible for a debtor to make a belated subchapter V election when their Chapter 11 case was pending at the time the SBRA was enacted[4] and (2) whether a belated subchapter V election results in impermissible retroactivity.

---

[4] Based on its ruling on the Debtors' Motion to Amend, the Court sees no need to further address in this opinion whether there exists a ***procedural mechanism*** under the Federal Rules of Bankruptcy Procedure for the Debtors to elect to proceed under subchapter V. The answer is simply, yes. Rule 1009(a) allows a debtor to amend a voluntary petition any time before the case is closed. And that designation remains in effect until an objection is filed and the Court rules on the matter. The Court adopted the reasoning laid out in *Progressive Solutions* and *Body Transit* in its prior ruling in order to lay out the correct procedure for debtors who contemplate making a subchapter V election while already in a pending case in this jurisdiction. The earlier ruling on the Debtors' Motion to Amend did not, however, address the underlying question of whether the Debtors may actually proceed under subchapter V nor did it address the standard the Court should adopt when reviewing objections to the Debtors' amended voluntary petition.

**B. The Court's Ruling Allows Compliance with the Procedural Requirements under the Bankruptcy Code.**

The UST makes much to do about the timing and procedural hurdles all parties would face should the Debtors be allowed to proceed under subchapter V at this juncture. The UST argues that the Debtors are attempting to evade the 45-day period within which the Court must confirm a proposed plan in § 1129(e). Specifically, the UST asserts that by imposing a 45-day deadline, Congress meant to keep a "short leash" with an expedited confirmation. As to the SBRA's procedural requirements, because the order for relief in this case was entered on May 16, 2019, i.e., the voluntary petition date, the 90-day plan filing requirement, as well as the 60-day status conference requirement, have long passed. According to the UST, it would be almost impossible for the Debtors, the subchapter V Trustee, and presumably the Court, to fulfill statutory requirements at this point in the case.

Over the last few months, several courts have addressed the same procedural arguments raised by the UST in this case and rejected them. Most notably, the Court relies on the reasoning set forth in *In re Twin Pines, LLC*, 2020 WL 5576957 (Bankr. D. N.M. April 30, 2020) and *In re Deidre Ventura*, 615 B.R. 1 (Bankr. E.D. N.Y. 2020). In *Twin Pines*, the U.S. Trustee argued that because the 45-day deadline in § 1129(e) expired before the debtor elected subchapter V, and because the deadlines imposed under the SBRA (the 60-day status conference and 90-day plan filing deadlines from the order for relief) had passed, the debtor was precluded from proceeding under subchapter V. *Twin Pines*, 2020 WL 5576957 at *3. Rejecting both arguments, the court found first that the Bankruptcy Code imposes no time limit on a debtor's subchapter V election or any other limitation on the election if the debtor qualifies as a subchapter V debtor. *Id.* The court also found that an extension of the 60-day status conference and 90-day plan deadlines was warranted because the debtor did not file a motion to proceed under subchapter V until eight days

after the effective date of the SBRA. *Id.* In other words, the Court found that the inability to comply with a law not yet in effect qualified as circumstances for which the debtor should not justly be held accountable under §§ 1188 and 1189. *Id.*

Similarly, in *Deidre Ventura*, the debtor amended her voluntary petition to a subchapter V designation when her case had been pending for over 15 months. *Deidre Ventura*, 615 B.R. at 2. The court considered the 90-day plan filing requirement and the 60-day deadline to hold a status conference and found that the debtor could not have possibly complied with the procedural requirements in a law that did not exist. *Id.* at 15. The Court agrees with the holdings in *Twin Pines* and *Deidra Ventura*.[5] First, just as in those cases, the Debtors here amended their voluntary petition after the effective date of the SBRA. The UST's argument that the Debtors are attempting to evade the 45-day requirement under § 1129(e) does not add up. There is simply no time limit prescribed under the Bankruptcy Code for the Debtors to make a subchapter V election. While the Court acknowledges that two previous extensions have been given to the Debtors (one extension to file a disclosure statement and plan and another extension under § 1121(e)(3) to confirm the plan), no party presented evidence at any hearing or in any pleading that the Debtors were not actively, and in good faith, attempting to submit a confirmable Chapter 11 plan.

The court believes that the Debtors' inability to meet the deadlines imposed under the SBRA—because it was not yet in effect—constitutes circumstances for which they should not be held accountable under the Bankruptcy Code and warrant an extension. As the Debtors correctly point out, the Court can easily enter a scheduling order imposing the new deadlines in an efficient

---

[5] The Court also agrees with the reasoning laid out in *In re Gregory Trepetin*, 617 B.R. 841 (Bankr. D. Md. 2020). In that case, after a discussion of other similar Bankruptcy Code "extension" section(s), the court found that an extension of the deadlines imposed under §§ 1188 and 1189 was permissible. The court's finding paved the way for the debtor's conversion from a Chapter 7 case to a subchapter V case under Chapter 11.

and time sensitive manner. As of the date of this opinion, the Court has done just that.[6] Thus, the Court finds that it is procedurally permissible under the Bankruptcy Code for the Debtors to have made a belated subchapter V election when their Chapter 11 case was pending at the time the SBRA was enacted.[7]

**C. No Vested Rights are Altered by the Retroactive Application of the SBRA in this Case.**

Turning to the issue of whether a belated subsection V election results in impermissible retroactivity, the UST and the Creditors make several arguments that should be fleshed out. First, the UST urges this Court to apply the cannon of statutory construction that disfavors retroactive application of statutes. The Court can quickly dispense with this argument. This Court, like other courts that have addressed the issue, holds that the new subchapter V provisions do not, in general, impair any vested property interest of creditors. *See In re Body Transit*, 613 B.R. 400, 407 (Bankr.

---

[6] The Court is certainly aware of at least two other cases finding with contrary views. *See In re Double H Transportation, LLC*, Case No. 19-131830-hcm (W.D. Tex. March 5, 2020)(striking the debtor's amended petition and finding that "permit[ting] the Debtor to . . . elect [s]ubchapter V status [116 days after the debtor filed its original petition] would create a procedural quagmire and likely create cause to dismiss or convert the [d]ebtor's case"). As an aside, the Creditors in this case argued something similar to the holding in *Double H Transportation* regarding the possibility of creating cause for conversion or dismissal under §1112. The Court does not find that argument persuasive, considering there could be a plethora of hypothetical arguments the Creditors could make as to why the Debtors' bankruptcy case could be dismissed for cause whether in subchapter V or not. The Court would also point to the case of *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333 (Bankr. S.D. Fl. 2020). *Seven Stars* was decided a little over a week after this Court's bench ruling but before this Opinion and Order was published. As such, the Court did not cite the case or rely on it in making its decision. Nevertheless, this Court is not persuaded by the court's reasoning in *Seven Stars* that the debtor's inability to meet the statutory deadlines imposed by the SBRA are solely the debtor's fault because it chose to amend its voluntary petition after the expiration the deadlines under §§ 1188(a) and 1189(b), notwithstanding the effective date of the SBRA and the debtor's ability to elect subchapter V was not until some eight months after the order for relief.

[7] *See also In re Blanchard*, 2020 WL 4032411 (Bankr. Ct. July 16, 2020)(overruling the U.S. Trustee's procedural objections to the debtors' amended voluntary petition electing to proceed under subchapter V).

E.D. Pa. 2020)(agreeing with *In re Moore Properties of Person County LLC*, 2020 WL 995544 (Bankr. M.D. N.C. Feb. 28, 2020) and holding that despite cannon of statutory construction disfavoring retroactive application of statutes, new subchapter V provisions, generally, do not impair vested property interest of creditors). In addition, the Court agrees with *Body Transit* and *Moore Properties* that it is more appropriate to apply the law presently in effect, which is the SBRA.

The Court believes that it must have a standard to evaluate any further arguments made in the objections by the UST and the Creditors to the Debtors' amended voluntary petition. The court in *Body Transit* supplies that standard:

> In evaluating an objected to a belated subchapter V election, [] court[s] may consider the extent to which the parties in interest have invested in the case and whether the court has entered orders that create sufficient vested property interests or post-petition expectations such that the application of subchapter V to those rights or expectations would 'offend elementary considerations of fairness.'"

*Body Transit*, 613 B.R. at 408 (quoting *Moore Properties*, 2020 WL 995544, at *5). The court in *Body Transit* also came to the conclusion that this standard adopted by the court in *Moore Properties* is, in effect, the same standard that courts apply when a party in interest objects to a Rule 1009 amendment, i.e., "whether the amendment is made in bad faith or would unduly prejudice the party." *Id.*

Both the UST and the Creditors seem to argue that because the Debtors cite to the absolute priority rule as the only impediment to confirmation, or the impetus for which they made the subchapter V election, applying the SBRA (which eliminates the rule) is an impairment of the Creditors' vested property rights. The UST states:

> [The] Debtors in this case specifically seek subchapter V election, in order to avoid the absolute priority rule and Discover Bank's rejection of the chapter 11 plan . . . . [I]t appears that the Debtors' election to subchapter V clearly alters the rights

> of the creditors in this case, specifically Discover Bank, eliminating the benefits of the absolute priority rule [which] block[ed] confirmation.

(Dkt. #213, P. 10-11). The Creditors continue this argument:

> [Allowing] SBRA qualification [at this stage] would, by eliminating application of the part of the historical fair and equitable test as implemented generally by unsecured creditor interests through the absolute priority rule, the very basis upon which Debtor[s'] initial chapter 11 plan was defeated, constitute a boon to Debtor[s] and a parallel detriment to unsecured claims.

(Dkt. #219, 202, Ex. A, P. 3).

The Court rejects these arguments. Just because the Debtors are now seeking to take advantage of the SBRA's provisions eliminating the absolute priority rule, the retroactive application of the SBRA does not impair the vested property rights of creditors. The Court must, however, view that fact in the context of its standard articulated above. In other words, the Court must consider whether the Debtors' reason for their subchapter V election, i.e., to avoid the absolute priority rule, was made in bad faith or would unduly prejudice a party.

No evidence presented to the Court suggests that the Debtors are acting in bad faith by seeking to take advantage of a law that may be more beneficial to small businesses like theirs. The only evidence argued by the Creditors is the Debtors' failure to comply with the turnover of information concerning the Creditors' collateral. While the information might not have been turned over in the timeliest fashion, that conduct simply does not factor into the Court's analysis as to *why* the Debtors chose to amend their voluntary petition to proceed under subchapter V.

Indeed, the conduct itself does not rise to the level of bad faith. As explained by the Debtors, during the early stages of their case, they had difficulty turning over information because of the drivers and tractor trailers involved. And many of the items of collateral had been subleased to subcontractors, making matters worse. The Court is even more resolute in its position after

considering the purposes behind passage of the SBRA and the current economic conditions affecting many small businesses.

Further, as the Debtors argue in their *Supplemental Response and Reply*, other courts have found no vested property rights were impaired (and no party was unduly prejudiced) under somewhat factual and/or procedural circumstances similar to those before this Court. *See In re Bonert*, 2020 WL 3635869, at *3-5 (Bankr. C.D. Cal. June 3, 2020)(finding that debtors, who waited six months after the voluntary petition date to designate as "small business debtors" and who later elected subchapter V after the establishment of the committee of unsecured creditors, did not do so in bad faith); *see also In re Bello*, 613 B.R. 894 (Bankr. E.D. Mich. 2020); *In re Sidebelts, Inc.*, Case No. 2019-25064-A-11 (Bankr. E.D. Cal. July 2, 2020).[8]

## IV. CONCLUSION

Based on the above, the Court finds that the Debtors can proceed under subchapter V. It is therefore, **ORDERED** that the UST's *Response/Objection* (Dkt. #213) is **OVERRULED**, and the Creditors' *Motions to Strike* (Dkt. #219, 220) are **DENIED**.

---

[8] The Court notes that the Creditors made an additional or alternative argument under § 105(a) as a potential basis to bar the Debtors from proceeding under subchapter V. The Creditors argue the Court should fashion some relief in their favor because "equity dictates". The Court does not find that Bankruptcy Code section relevant to the instant discussion and standards articulated in this Opinion and Order for determining whether the Debtors may proceed under subchapter V.