___

**SO ORDERED,**



*Judge Selene D. Maddox*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

IN RE: TONY AND MELISA EASTER                    CASE NO.: 19-12063-SDM

DEBTORS                                          CHAPTER 11

**MEMORANDUM OPINION ADDRESSING THE MOTION FOR RELIEF IN PART AND FINDING THE ABOVE-GROUND SWIMMING POOL TO BE PERSONAL PROPERTY**

This cause came before the Court for a telephonic hearing on September 22, 2020 on the *Motion for Termination of Automatic Stay Provided Under 11 U.S.C. §§ 362, for Abandonment of Estate Property and for Other Relief* (the "Motion for Relief")(Dkt. #173) filed by First Metropolitan Financial Services, Inc. ("First Metropolitan") and the Debtors' *Answer and Response* (the "Response")(Dkt. #190). The issue before the Court is whether the Debtors' above-ground swimming pool (the "swimming pool") constitutes a fixture, and consequently, whether First Metropolitan properly perfected its security interest in that swimming pool. At the conclusion of the hearing, the Court took that matter under advisement and is now prepared to rule.

### I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

Page 1 of 8

§ 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)(matters concerning the administration of the estate) and (G)(motions to terminate, annul or modify the automatic stay).

## II. FACTS

The subchapter V Debtors, Tony and Melisa Easter, secured a loan from First Metropolitan on June 20, 2018 and used those loan proceeds to purchase a 30-foot "Round Blue" above-ground swimming pool, a "Luciq" pool liner, and a "Shark" pool cleaner from Backyard Pools in Tupelo, Mississippi. As evidenced by the security agreement and UCC financing statement attached to Proof of Claim #23-1, First Metropolitan was purportedly granted a purchase money security interest in that collateral.[1] Creditor's Ex. 4. On April 2, 2020, First Metropolitan moved to terminate the automatic stay and take possession of its collateral. (Dkt. #173). In their Response, the Debtors admit that First Metropolitan "attempted to secure a purchase money security interest in an above ground pool" but that "the above ground pool has now become a fixture and can be secured only with a real estate deed of trust." (Dkt. #190).

At the hearing on September 22, 2020, the Court admitted in evidence four exhibits proposed by First Metropolitan and two exhibits proposed by the Debtors. The exhibits are a combination of loan documents and various photographs of the swimming pool. In addition to the documentary evidence presented at the hearing, the Court heard testimony from one the Debtors, Melisa Easter. According to Mrs. Easter, after the Debtors purchased the swimming pool, Backyard Pools installed the swimming pool by digging a two-foot hole into the ground, leveling off the two-foot hole with sand. While there is no structure or deck around the swimming pool to

---

[1] The Debtors also pledged additional collateral in two other loans from First Metropolitan. See Proofs of Claims #22, 24.

secure it to the land or the Debtors' home, the swimming pool is secured by several posts or stakes also driven two feet in the ground. Mrs. Easter testified that the swimming pool is equipped with a plastic liner and a pump and filter run by an electrical hook up to their home. The Debtors also put gravel around the pool to enhance the overall look of the area. In response to questioning by First Metropolitan, Mrs. Easter admitted that the swimming pool could be moved because it was assembled using prefabricated pieces. Mrs. Easter stated, however, that moving the swimming pool could cause damage to the plastic liner and leave a large hole in the Debtors' backyard.

### III. DISCUSSION

The parties' arguments are straightforward. The Debtors argue that because the swimming pool is secured two feet in the ground with stakes or posts, the Court should glean their intent for the swimming pool to be a permanent fixture to the real property. On the other hand, First Metropolitan argues that, unlike in-ground swimming pools, the swimming pool here is portable in nature. In other words, because the swimming pool is not secured by a deck, cement, or any type of underground wiring or plumbing, the swimming pool is merely personal property. The Court notes that the legal issue presently before it is somewhat unique in that it does not involve common legal disputes over personal property versus fixtures like those between tenant and landlords or even questions over fixture filings and lien priority between creditors. The Court is also not aware of any cases in this jurisdiction which answer the legal issues before it. In any event, after considering all the relevant evidence and legal arguments, the Court finds that the above-ground swimming pool does not constitute a fixture. Consequently, the Court finds that First Metropolitan does hold a valid purchase money security interest in the swimming pool.

Generally, a fixture is defined as "personal property that is attached to land or a building and that is regraded as an irremovable part of the real property . . . ." Fixture Definition, *Black's*

*Law Dictionary* (11th ed. 2019), *available at* Westlaw. In bankruptcy proceedings, the question of whether goods have become part of real estate, so as to constitute fixtures in determining whether security interest in goods has been properly perfected, is a matter of state law. *Matter of Farrier*, 61 B.R. 950, 952 (Bankr. W.D. Penn. 1986).

Under Mississippi law, the general rule is that "whatever is affixed to land becomes a part of the realty." *In re Marascalco*, 2020 WL 5582300 at *2 (Bankr. N.D. Miss. Aug. 5, 2020)(citing *Simmons v. Bank of Mississippi*, 593 So. 2d 40, 41 (Miss. 1992). There are exceptions to this general rule, and courts have articulated factors to determine if personal property has become a fixture: "its nature, mode of attachment, purpose for which used, the relation of the party making the annexation, and other attending circumstances indicating the intention to make it a temporary attachment or a permanent accession to the realty." *Marascalco*, 2020 WL 5582300 at *2 (Bankr. N.D. Miss. Aug. 5, 2020)(citing *Weathersby v. Sleeper*, 42 Miss. 732, 741-42 (Miss. Err. & App. 1869).[2] The parties' intent is not determined by analyzing their collective state of mind, but rather, analyzing the parties' actions at the time the personal property is placed on the real property. *Farrier*, 61 B.R. 950 at 954. Intention to make an article a fixture may be apparent from the mode of attachment alone, especially where removal cannot me made without serious injury to the property. *Weathersby*, 42 Miss. at 741-42.

At least two courts in other jurisdictions have addressed the question of whether above-ground swimming pools constitute fixtures under state law. The Court finds the cases of *Matter of*

---

[2] As Judge Woodard aptly noted and cited in *Marascalco*, the parties' intent is the primary factor when determining whether personal property constitutes a fixture. See § 55:3. Fixtures, 6 MS Prac. Encyclopedia MS Law § 55:3 (2d ed.)(citing *Lamar Corp. v. State Highway Com'n*, 684 So. 2d 601 (Miss. 1996)). See e.g. *Connolly v. McLeod*, 52 So. 2d 473, 475 (citing *Workman v. Henrie*, 71 Utah 400, 266 P. 1033, 1035 (1928)("[T]he intention of the person making the annexation [is generally] regarded the most important or controlling factor . . . .").

*Farrier*, 61 B.R. 950 (Bankr. W.D. Penn. 1986) and *In re Black*, 95 B.R. 223 (Bankr. N.D. Ala. 1988) particularly instructive. In *Farrier*, the court faced a dispute over the proceeds received from the sale of an above-ground swimming pool between an insurer that claimed it was the assignee of a perfected security interest, and a mortgagee, which held a mortgage on the real estate where the swimming pool was installed. *Farrier*, 61 B.R. at 951. In its analysis of whether the swimming pool was a fixture or personal property, the court focused on three elements under Pennsylvania state law, which are similar to the factors articulated by Mississippi courts: (1) annexation (how the swimming pool was placed on the real estate); (2) adaption (how the real estate was adapted for the swimming pool's installation and any "material injury" resulting from its removal); and (3) intention. *Id.* at 953.

The court noted that the swimming pool was installed in sections, made of lightweight aluminum, and the only substantive connection to the real estate was through an electrical line and gravity. *Id.* Further, the court found that the real estate was not specifically adapted for the swimming pool's installation, i.e., no underground plumbing, concrete walls, or foundation. *Id.* The court contrasted the above-ground swimming pool to an in-ground swimming pool in that the latter would require significant excavation and adaption whereas removal of the former would only result in the "absence of grass on the area where the swimming pool previously rested." *Id.* The court also found that the parties did not intend for the swimming pool to be permanent based on their failure to further "attach" the swimming pool in any way. *Id.*

In *Black*, the chapter 7 debtors claimed an exemption in an above-ground swimming pool, which they latter disassembled and took with them after abandoning their home. *Black*, 95 B.R. at 224. The mortgagee objection to the debtors' exemptions, arguing that the swimming pool is a

fixture subject to the mortgage. *Id.* at 223. The court considered the following elements under Alabama state law:

> (1) Actual annexation to the realty or to something appurtenant thereto: (2) Appropriateness to the use or purposes of that part of the realty with which it is connected; (3) The intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred; (a) From the nature of the articles annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made.

*Id.* at 224. The court first looked at the "strength and permanence" of the anchoring foundation and found that the pool was not cemented or blocked off in any way. *Id.* Further, while the debtors had at some point built a wooden deck around the pool, the debtors later removed the deck and attached it to the front porch. *Id.* The court also pointed out that the swimming pool was only meant to be used during a certain time of year, and that its assembly and disassembly required only a few hours. *Id.* at 224-25. Ultimately, the court found that the swimming pool was not a fixture, as the very nature of the pool itself lacked permanency. *Id.* at 225.

The facts in *Farrier* and *Black* are similar to those presently before this Court. And while the legal test as articulated under Mississippi law may not exactly mirror the legal standards adopted in other states, the Court is engaging in an almost identical analysis.

**A. Annexation of the Swimming Pool (The Nature and Mode of Attachment)**

According to Mrs. Easter's testimony and with what the Court can gather from photographs of the swimming pool presented at the hearing, little evidence points to the permanent nature of the swimming pool. Like the swimming pool in *Farrier*, the swimming pool here is made of prefabricated pieces, containing a combination of aluminum and plastic. The "connections" with the real property are also minimal at best. As First Metropolitan correctly points out, unlike an in-ground swimming pool, there is no cement or other structure surrounding or supporting the

swimming pool here. Removing the swimming pool, while not necessarily convenient, would involve merely pulling up the stakes or posts around the swimming pool, disconnecting the electrical line(s) used to operate the pool, and dissembling the prefabricated pieces.

The Court notes several differences between the facts in this case and in *Farrier* and *Black*. Namely, the testimony by Mrs. Easter that the swimming pool (and possibly the ladder) sit two feet deep in the ground supported by several stakes or posts. The Debtors also laid some gravel around the swimming pool for aesthetic purposes. The Court, however, does not find persuasive that a two-foot hole leveled off with sand and a few stakes or posts constitute a true annexation to the real property. The gravel laid by the Debtors equally does not speak to the permanent nature of the swimming pool. Further, the Court is not convinced that disassembly would do "serious injury" to the swimming pool or the real property on which it sits. This factor weighs in favor of the Court's categorization of the pool as personal property.

**B. Swimming Pool's Purpose and the Debtors' Use**

Mrs. Easter provided scant, if any, testimony about the Debtors' use of the swimming pool, but like the court in *Black*, this Court recognizes that the swimming pool in question is used recreationally for enjoyment. It is also common sense that unless there is some type of heating mechanism (and no evidence was presented to indicate the existence of such a mechanism), the swimming pool is used seasonally in warmer weather. While Mrs. Easter acknowledged that the pool *could* be moved, based on her testimony, it is clear to the Court that the Debtors' have not moved the swimming pool when it is not in use. Nevertheless, the swimming pool *can* be moved and stored when not in use. Thus, this factor is at least neutral in the Court's analysis.

**C. The Parties' Intention to Make the Swimming Pool Permanent**

As Mississippi courts have indicated, the intent of the Debtors is likely the most controlling factor. Unfortunately for the Debtors, there is simply not enough "attending evidence" to show the Debtors intended to make the swimming pool a permanent attachment. Besides the overall impermanent nature of the swimming pool itself, the debtors' failure to build more anchored structures of support for the swimming pool signaled their lack of intention to make the swimming pool a permanent attachment. Stakes, posts, or gravel may be evidence of the Debtors' intent of something (perhaps preventing the swimming pool walls from collapsing), but the Court does not find those actions amount to an intent to make the swimming pool a permanent fixture to the real property. This factor supports the Court's decision finding the swimming pool is personal property as opposed to a fixture.

## IV. CONCLUSION

Based on the above, the Court finds that the swimming pool does not constitute a fixture, and First Metropolitan does hold a valid purchase money security interest in the swimming pool. The parties have 14 days to submit an agreed order, consistent with this Memorandum Opinion, resolving the Motion for Relief (Dkt. #173) and Response (Dkt. #190). The agreed order should address whether the Debtors intend to retain or surrender the swimming pool. If the parties cannot agree to resolve the underlying Motion for Relief, the Court will enter an order in due time.